FRANKLIN LEACH & wife *vs.* OLIVE M. FOBES.

Specific performance of an agreement of compromise, made upon a controversy concerning
    the validity of a will, will be decreed in equity, without inquiring into the adequacy of
    the consideration.

An answer under oath to a bill in equity is no evidence of matters in avoidance of, or n t
    responsive to, the allegations of the bill, upon the hearing of an issue of fact.

An agreement to convey real estate and to transfer shares in corporations will be specifically
    enforced in equity, both as to the real estate and the shares.

BILL IN EQUITY for specific performance. The bill alleged
that Isaac Fobes died on the 22d of June 1855, leaving the
female plaintiff his sole daughter and heiress, and the defendant,
her stepmother, his widow ; that on the 9th of April preceding
he had executed an instrument purporting to be his will, giving
most of his property, real and personal, to the defendant, the pro-
visions of which, as the plaintiffs then and now believed, and
had good reason to believe, were brought about by undue influ-
ence exercised over him in his last illness and while he was very
weak in body and mind, and the plaintiffs therefore objected to
its probate as his will ; that while the probate was pending, on
the 3d of July 1855, the plaintiffs and defendant compromised
the matter by agreeing that the provisions of the will as to them
should be set aside, and the testator's real estate, shares in cor-
porations and other personal property be divided between the
defendant and the female plaintiff according to an agreement

then executed by them under seal; that the plaintiffs offered to perform their part of the agreement and to make conveyances and transfers to the defendant according to it, and requested the defendant to convey according to the agreement to the female plaintiff the rest of the testator's real estate, stocks and other personal property, but the defendant declined to accept the conveyances and transfers tendered by the plaintiffs, or to execute any herself.

The answer under oath admitted the making of the will; denied the other allegations of the bill; and alleged that the testator married the defendant in 1822; that by their joint industry and frugality they acquired most of the property of which he died seised and possessed, and she contributed largely to it; that the homestead was unproductive; that in making his will he was uninfluenced by any one, and deliberately made it of his own free will, and the plaintiffs knew it and did not believe that they could break or defeat it; that he told her a few days before his death that he had made good provision for her in his will, and was afraid that Franklin Leach would make her a great deal of trouble, and she must go to Aretas Fobes and Benjamin Keith for advice and assistance; that on the 2d of July she called on Aretas Fobes to take her to the probate court, and he then, and Leach afterwards, each told her that Leach would break the will, for Aretas knew enough to do it; that she was induced to sign the agreement alleged in the bill without anything having been said by or to her about several matters contained in it, and without any or adequate consideration, by the artful and improper management of the plaintiffs, and of Aretas Fobes, who falsely pretended to be her friend, and by their unlawful combination, and false and fraudulent pretence that the will could not be established, and with the intent of entrapping her into a surrender of part of the property given her by the will, and while she was by their threats and declarations greatly disturbed in her mind and disqualified to understand or do business, and believed the paper then signed not to be binding until a duplicate was signed and each party had one, and the agreement was never completed or delivered; that on or

about the 15th of July 1855 she called on the plaintiffs to see the paper which she had signed, and, on hearing it read, told them that she did not know that it contained the things mentioned in it, that she had never agreed to any such things, and should treat it as null and void, and set up the will; that she afterwards proved the will in the probate court; that no evidence was offered, and none existed, to show that the testator was unduly influenced in making the will; that the plaintiffs appealed on the ground that " there was undue influence used upon the mind of the testator in the making of said will," but failed to prosecute their appeal, and the probate was affirmed in this court; that the agreement was imperfect, unjust and oppressive, and so not binding; and that the plaintiffs had a full, adequate and complete remedy at law.

The plaintiffs filed a general replication, and at May term 1858 two issues were submitted to a jury whether the defendant signed, executed and delivered the agreement; and whether the agreement was procured by fraud, imposition and false representations on the part of the plaintiffs or their agents. The jury found for the plaintiffs on both issues; and the case was reported to the full court.

*E. Ames,* for the plaintiffs, cited *Stapilton* v. *Stapilton*, 1 Atk. 2, and 2 White & Tudor's Lead. Cas. in Eq. 265, & note; *Barlow* v. *Ocean Ins. Co.* 4 Met. 270; *Allis* v. *Billings*, 2 Cush. 27; *Ross* v. *Chester*, 1 Hagg. Eccl. 227; *Clark* v. *Flint*, 22 Pick. 231; *Andrews* v. *Brown*, 3 Cush. 130; *Adderley* v. *Dixon*, 1 Sim. & Stu. 607; Willard on Eq. 276, 280, & cases cited; *Duncuft* v. *Albrecht*, 12 Sim. 189; *Shaw* v. *Fisher*, 2 De Gex & Sm. 11; *Wynne* v. *Price*, 3 De Gex & Sm. 310; *Doloret* v. *Rothschild*, 1 Sim. & Stu. 590; *Pusey* v. *Pusey*, 1 Vern. 273; *Nutbrown* v. *Thornton*, 10 Ves. 163; *Somerset* v. *Cookson*, 3 P. W. 390; *Fells* v. *Read*, 3 Ves. 70; *Macclesfield* v. *Davis*, 3 Ves. & B 16 Batten on Spec. Perf. 35, 37, 38, 69, 251–253, 311, & cases cited.

*B. Sanford,* for the defendant, cited 2 Story on Eq. § 750; 1 Sugd. Vend. (7th Amer. ed.) 275, & cases cited in notes 2, 3; 2 White & Tudor's Lead. Cas. in Eq. 255, 259, 260, & cases

cited ; *Mechanics' Bank* v. *Lynn*, 1 Pet. 381 ; *Cann* v. *Cann*, 1 P W. 727 ; *Marshall* v. *Collett*, 1 Y. & Col. Exch. 238 ; *Gordon* v. *Gordon*, 3 Swanst. 400 ; *Cadman* v. *Horner*, 18 Ves. 10 ; *Clermont* v. *Tasburgh*, 1 Jac. & Walk. 112.

BIGELOW, J. The agreement set out in the bill is of a nature which is entitled to the highest favor at the hands of a court of equity. It is the result of a family compromise of a contro∗ versy which had arisen between the heir at law and the devisee of a testator, concerning his sanity and free agency at the time of making his last will. Such contracts are not against public policy. On the contrary, as they contribute to the peace and harmony of families and to the prevention of litigation, they will be supported in equity without an inquiry into the adequacy of the consideration on which they are founded. *Stapilton* v. *Stapilton*, 1 Atk. 2. *Naylor* v. *Winch*, 1 Sim. & Stu. 565. *Westley* v. *Westley*, 2 Dru. & War. 503.

There is nothing in the agreement, which tends to show that its fulfilment and complete execution by the defendant would be inequitable or operate with hardship on her. Nor are there any facts disclosed in the bill and answer, which lead to any just inference that there was any omission to disclose material facts concerning the matters in controversy, or that the agreement was entered into under any misapprehension or mistake on the part of the defendant. The finding of the jury distinctly negatives all fraudulent or unfair practices by the plaintiffs or either of them in procuring the defendant to execute and deliver the agreement of compromise. Averments in the answer, not responsive to the allegations in the bill, or setting up new matter in avoidance of the case made by the plaintiffs, must be supported by proof, otherwise, they cannot be regarded in adjudicating on the rights of parties at a hearing upon an issue of fact. It is only when the defendant denies allegations in the bill under oath, that the answer, in the absence of evidence, is deemed to be conclusive. We see no sufficient reason in any of the facts which are duly proved or admitted, to justify us in withholding from the plaintiffs the relief which they seek, on the ground of any want of equity.

Nor have we any doubt as to the right of the plaintiffs to ask for the enforcement of this contract by a decree in chancery The remedy at law is not adequate and complete. The agreement is not one for the transfer of shares in a corporation merely. It is a contract also for the conveyance of a certain right or interest in real estate, which is an appropriate subject for specific relief in equity. The court has jurisdiction to decree that the land which is the subject of the agreement shall be conveyed to the plaintiffs; and, as it will give relief for this part of the contract, it will also entertain jurisdiction of the whole agreement, and enforce the other stipulations respecting the transfer of shares in the incorporated companies named in the bill, instead of turning the party over to seek his remedy therefor by an action at law. The more recent authorities are quite decisive as to the authority of a court of chancery to decree the specific performance of a contract for the transfer of shares in joint stock companies or corporations, in cases in which it appears that the capital stock is fixed at a certain amount and the number of shares is limited.* *Duncuft* v. *Albrecht*, 12 Sim. 189. *Shaw* v. *Fisher*, 2 De Gex & Sm. 11, and 5 De Gex, Macn. & Gord. 596. *Cheale* v. *Kenward*, 3 De Gex & Jon. 27 But without deciding whether a suit in equity can be supported for the sole purpose of enforcing a contract for the sale of shares in a corporation, we are of opinion that such an agreement may be enforced in equity when it forms part of a contract for the sale and transfer of real estate, and the suit is brought for the conveyance of the land as well as for the transfer of the shares. *Decree accordingly.*

---

* See *Todd* v. *Taft*, 7 Allen, 371.